UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| NORMAN MEDLEY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | **)** | |
| v. | ) | Case No. 1:06CV160 CDP |
| | ) | |
| MARK McCLENDON, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Norman Medley has filed an action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his fourth amendment rights by making an unlawful entry into his residence, conducting a search without consent or probable cause and exigent circumstances, and arresting him without probable cause.[1] Defendants now move for summary judgment on all claims. Because genuine factual disputes exist regarding whether Medley consented to the officers' entry into and search of the residence, I will deny the motion for summary judgment.

---

[1] In his "Motion to Deny Summary Judgment," Medley raises numerous issues that are not properly before the Court. The only claims before me are those that Medley received permission to proceed upon pursuant to 28 U.S.C. § 1915, which are the fourth amendment claims. For this reason, I will not consider any new claims that Medley attempts to raise in his opposition to summary judgment.

1

## Standard of Review Governing Summary Judgment

A court may grant a motion for summary judgment only if it finds that all the evidence before it demonstrates "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden is on the moving party. Id. The court must view all facts and resolve all ambiguities in favor of the non-moving party. Id. However, the non-moving party must set forth specific facts showing that there is sufficient evidence to allow a jury to return a verdict in that party's favor. Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986). Under these standards I review the facts in this case.

## Statement of Facts

On December 8th, 2005, the Dunklin County Sheriff's Office was investigating a residential burglary that had occurred some time that morning. In the course of this investigation, Deputy Randal Midkiff identified two suspects, Chris Johnson and Dennis Lebo. Johnson and Lebo were questioned in connection with the burglary, and admitted taking several items, including firearms, a DVD player, and a ceiling fan.

Johnson and Lebo stated that they had left two of the firearms with Medley and were going to return to his house to obtain methamphetamine in exchange for

the weapons. The matter was then referred to Sergeant Mark McClendon of the Missouri State Highway Patrol.

Johnson and Lebo agreed to talk to Medley while wearing recording devices. Johnson and Lebo went to Medley's residence at around 9:00 p.m. and engaged him in a conversation while the officers listened in. On the radio transmission, Medley was heard telling Johnson and Lebo that he had just talked to his partner, who "only has a gram and does not want to get rid of it." Medley said that he would need more time to get more. Medley also made statements regarding a .270 caliber rifle and a .30-06 rifle.

Upon leaving the Medley residence, Johnson and Lebo conferred with Sergeant McClendon and told him that they had seen the DVD player in the home. At around 9:50 p.m., Sergeant McClendon, accompanied by Deputies Midkiff and Hopkins, Missouri State Highway Patrolman Scoggins, and Bootheel Drug Task Force Agents Higgens and Decker went to the Medley residence with the intention of arresting Medley for the possession of stolen property. They did not have an arrest warrant.

At the time, Medley was living with his mother in her home. In addition to the mother's house, also on her property were two trailers, one of which was occupied by Medley's brother and one of which was used for storage. Medley was

in the storage trailer with his girlfriend, Cassidy Bowles, when the officers arrived.

Medley testified that he heard "caboom" as the bottom of the door was blown in. He asked who was there and the officers announced that it was the police and to open the door. Medley removed a chair that had been placed in front of the door to keep it shut, and the officers came running in with their guns drawn and told him to get down. Medley testified that while he was on the floor the officers went through the house, and then took him into the bedroom. They asked him about the firearms and he stated he did not know where they were. Medley was asked to empty his pockets, and removed a prescription bottle in another person's name, containing three peach-colored pills. McClendon then gave Medley his Miranda warnings, and placed him under arrest for unlawful possession of a controlled substance. Medley testified that the officers never asked his consent to search and that he never gave consent.

The officers testified to a very different scenario, and testified that Medley consented to the search. Medley's girlfriend, who was present at the time, also testified that Medley consented to the search. It is undisputed that Medley signed at least one consent to search form, but the circumstances regarding the signing are disputed. Medley testified that it was only after the search that the officers told him to sign the form, and he says that his signature was not voluntary. He testified

4

that he actually signed two consent to search forms. When he signed the first one he wrote "UD" next to his name, which stood for "under duress." The police tore that one up and told him to sign another one, which he says he did because he was concerned that one of the police officers (who he has not sued) was "wanting to put a bullet in me."

The officers found and seized:

(1) Loose marijuana and a marijuana cigarette;

(2) Four Super X .22 caliber rounds;

(3) A black "Mudd" case containing six rounds of Winchester .270 caliber ammuition;

(4) A Regent DVD player; and

(4) A boxed ceiling fan.

Medley was indicted with being a felon in possession of ammunition. United States v. Norman Medley, 1:05CR181HEA (E.D. Mo.). He later pleaded guilty to a superseding indictment charging him with being a felon in possession of a firearm. On January 15, 2008 he was sentenced to 188 months' imprisonment. In his guilty plea Medley admitted that he received the .270 rifle from Johnson and that he possessed the firearm on December 8, 2005, the date in question here. Because the gun was never recovered, none of the evidence

actually seized during the search of Medley's trailer was used to convict him of felony possession of a firearm.[2]

### Legal Standard

Qualified immunity protects government officials from liability under 42 U.S.C. § 1983 unless the conduct alleged "violated a clearly established constitutional or statutory right of which a reasonable person would have known." Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006). In considering the assertion of qualified immunity, the court will follow a two-step analysis. First, the court analyzes whether, viewed "in the light most favorable to the party asserting the injury," the facts alleged show that the conduct of the officers violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If the allegations do not establish a constitutional violation, "there is no necessity for further inquiries into qualified immunity." Id. However, if a violation could be established, the next step is for the court to consider whether "the law clearly established that the officer's conduct was unlawful in the circumstances of the case." Id. In order for a right to be "clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that

---

[2]According to his guilty plea, Medley was interviewed and admitted that he was in possession of the firearm.

what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

## Discussion

Medley alleges that defendants made an unlawful entry into his home to search it and arrest him without a warrant. In accordance with the Fourth Amendment guarantee of the right to be free from "unreasonable searches and seizures," the warrantless arrest of a suspect in his or her home is "not permissible absent exigent circumstances or consent to enter." United States v. Chapman, 902 F.2d 1331, 1333 (8th Cir. 1990) (quoting United States v. Purham, 725 F.2d 450, 255 (8th Cir. 1984)). Similarly, a warrantless search of a home must be supported by either consent or probable cause and exigent circumstances. Anderson, 483 U.S. at 641; United States v. Walsh, 299 F.3d 729, 733 (8th Cir. 2002).

Even if the officers had probable cause to arrest Medley for receipt of stolen property, factual disputes remain regarding the entry to the home and the search. Defendants have not argued that exigent circumstances existed, and have instead based their arguments on Medley alleged consent. But Medley's sworn testimony creates genuine disputes regarding these issues. Whether Medley voluntarily consented to the entry or to the search is at the center of the dispute, and I cannot simply decide that I believe the police instead of Medley on summary judgment.

This key factual dispute must be resolved by a jury.

Viewed in the light most favorable to the non-moving party, Medley's version of the facts, if proven at trial, could establish that his fourth amendment rights were violated. Because the law with respect to warrantless searches and arrests is clearly established, and because if Medley's version of events is true there can be no argument that defendants' actions were objectively reasonable, I must also deny defendants' motion for summary judgment based on qualified immunity grounds.

Finally, I note that Medley's recent conviction for being a felon in possession of a firearm is not a complete defense to his § 1983 claims for damages arising from the warrantless entry and search of his trailer and his warrantless arrest. Therefore, <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), does not bar Medley's claims. See <u>Thurmond-Green v. Hodges</u>, 128 Fed. Appx. 551, 552 (8th Cir. 2005) (<u>Heck</u> does not bar federal prisoner's § 1983 claim for damages arising out of warrantless arrest and search of his home where plaintiff pled guilty to a later-charged offense and not the offense for which he was arrested; moreover, because plaintiff was arrested "after officers had illegally entered his home . . . even if the officers had probable cause to arrest him, a warrantless arrest would be unlawful absent exigent circumstances.").

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motions for summary judgment [#33, #35] are denied.

This case will be set for trial by separate order.

_/s/ Catherine D. Perry_
_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 19th day of February, 2008.